COURT OF APPEALS
DECISION
DATED AND FILED

July 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1091-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF1861

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

MILES JIMMY CRUZ,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Miles Jimmy Cruz appeals a judgment convicting him of first-degree sexual assault (great bodily harm), kidnapping, strangulation

and suffocation, and second-degree recklessly endangering safety. He argues that his Fourth Amendment rights were violated when the police collected DNA evidence from him through fingernail scrapings and buccal swabs without obtaining a search warrant. We conclude that Cruz consented to both searches, and, therefore, Cruz's Fourth Amendment rights were not violated. Accordingly, we affirm.

## BACKGROUND

¶2 A woman carrying an infant was physically and sexually assaulted while walking on a public trail. An eyewitness told deputies that the assailant wore a red hooded sweatshirt and carried a tan blanket. A short time later, the deputies located 17-year-old Cruz, who bore fresh scratches on his arms and matched portions of the description. Cruz was transported to the station as a reported runaway, not under formal arrest.

¶3 Detective Sergeant Matt Guth conducted a video recorded interview with Cruz in a room at the police station. Guth read Cruz his *Miranda*[1] rights. Guth asked him about what was going on with his life and specifically questioned whether Cruz had gotten into a fight with a woman with a baby that day, which Cruz denied. After about 20 minutes, Guth noticed Cruz repeatedly biting his fingernails. Concerned that any foreign DNA might be lost by Cruz doing this, Guth retrieved a collection kit and said, "I'm gonna collect some DNA from your fingers." After Cruz said, "Okay," Guth said, "Is that all right?" Cruz nodded his head, then extended his hand, and Guth swabbed the underside of each nail.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

Roughly three hours later as the interview was concluding, Guth asked to "eliminate" Cruz as a suspect by taking a buccal swab. Cruz asked, "you put that in my mouth, right?" Cruz acknowledged that he understood, nodded, and opened his mouth, whereupon Guth collected the sample.

¶4 Cruz moved to suppress both DNA samples, arguing there was a lack of consent to their collection.[2] Following an evidentiary hearing, the circuit court denied the motion, making numerous factual findings that supported the notion that Cruz had voluntarily consented to both search requests. Cruz then pled no contest to the charges for which he was convicted. Cruz now appeals, renewing his Fourth Amendment objections to the fingernail and buccal swabs.

## DISCUSSION

¶5 "The Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Wisconsin Constitution protect people from unreasonable searches and seizures." *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729. Warrantless searches are presumptively unreasonable, but the State may overcome that presumption by proving a recognized exception to the warrant requirement, such as voluntary consent by the person subject to the search. *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998). Whether consent is voluntary is a mixed question of fact and law. *State v. Bermudez*, 221 Wis. 2d 338, 345, 585 N.W.2d 628 (Ct. App. 1998). We will not upset the circuit court's findings of fact "unless they are contrary to the great weight and clear preponderance of the evidence." *Id.* However, we

---

[2] According to the complaint, the DNA analysis showed "Very Strong Support" for the conclusion that the victim's DNA was present under Cruz's fingernails.

independently determine whether, based on the facts, the constitutional standard of voluntariness is met because this determination presents a question of law. *Id.* at 345-46.

¶5      The consent inquiry is an objective one: the question is what a typical reasonable person would have understood from the exchange under all of the circumstances. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  A search is consensual when the defendant gives permission and that permission is knowing, intelligent, and voluntary under the totality of circumstances.  *Bermudez*, 221 Wis. 2d at 348. "In considering the totality of the circumstances, we look at the circumstances surrounding the consent and the characteristics of the defendant; no single factor controls." *State v. Artic*, 2010 WI 83, ¶33, 327 Wis. 2d 392, 786 N.W.2d 430.  *Artic* lays out six nonexclusive factors for assessing the voluntariness of consent:

> (1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation  of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.

*Id.*, ¶33.

¶8      Applying the six *Artic* factors to Guth's request to collect DNA from Cruz's fingers, all but one factor favor a finding of voluntary consent.  Guth used no deception when interacting with Cruz; to the contrary, he explicitly asked Cruz

if he had been in a fight with a woman earlier in the day before asking Cruz for DNA. Guth made no threats or show of force, and the interview-room conditions were neutral. Cruz was offered water and restroom breaks. Cruz freely cooperated, by verbally saying, "OK," nodding, and extending his hand when asked for DNA from his fingernails. Although he was only 17, Cruz had completed high school. Cruz received *Miranda* warnings at the beginning of his interview with Guth, and Cruz exhibited no confusion or impairment. While Guth did not expressly tell Cruz that he could refuse to provide the DNA samples, that single factor does not outweigh the other five. Under the totality of circumstances, we conclude that Cruz's consent to the collection of DNA from his fingernails was freely, intelligently, and voluntarily given.

¶10 The buccal swabs likewise rested on voluntary consent, for many of the same reasons previously listed. Guth explained that a "swab" would help "eliminate" Cruz as a suspect, making it clear that the swabs were being done as part of a criminal investigation. Cruz responded, "you put that in my mouth, right?" He then nodded and opened his mouth. Those affirmative words and gestures exceed the mere acquiescence condemned in *State v. Johnson*, 2007 WI 32, ¶19, 299 Wis. 2d 675, 729 N.W.2d 182.

¶11 In sum, the warrantless fingernail scrapings and buccal swabs did not violate Cruz's Fourth Amendment rights because Cruz voluntarily consented to them. Accordingly, the circuit court properly denied Cruz's motion to suppress.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2023-24).

5